| | |
|---|---|
| ALEXANDER LONG and JESSICA UPTHEGROVE, on behalf of themselves and others similarly situated, | CIVIL ACTION |
| Plaintiffs, | CASE NO. |
| | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| CERNER CORPORATION D/B/A ORACLE HEALTH and JUPITER MEDICAL CENTER, INC., | *Electronically Filed* |
| Defendants. | |

## CLASS ACTION COMPLAINT

Alexander Long and Jessica Upthegrove, on behalf of themselves and all similarly situated persons, allege the following against Cerner Corporation d/b/a Oracle Health ("Oracle Health" or "Oracle"), Jupiter Medical Center, Inc. or ("Jupiter"), (collectively, "Defendants"),[1] and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs make these allegations based upon personal knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## NATURE OF THE ACTION

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. Oracle Health, formerly Cerner Corporation, is the second-largest electronic health

---

[1] CBS 12 News, *Jupiter Medical alerts patients after third party data breach exposes health records*, January 21, 2026, https://cbs12.com/news/local/jupiter-medical-center-experiences-possible-data-breach-due-to-third-party-corporation-cerner-florida-news-third-party-electronic-health-record-vendor-cerner-corporation-medical-record-numbers-doctors-diagnoses-medicines-test-january-21-2026.

record ("EHR") vendor in the United States, holding about 22% of the U.S. EHR industry.[2] Oracle Health should have industry-leading data security systems in place. Oracle Health acknowledges that it "has been trusted with some of the world's most sensitive and regulated data" and understands that it has a legal duty to safeguard that data from unauthorized access and disclosure.[3] But Oracle Health failed to meet its duty, leading to a massive data breach in January 2025 that compromised the extremely sensitive financial and medical information entrusted to it by patients and their healthcare providers (the "Data Breach").

3.     Defendant Cerner Corporation d/b/a Oracle Health is an electronic medical record vendor with its principal place of business in Kansas City, Missouri. It contracted with Jupiter as Jupiter's EHR vendor.

4.     Plaintiffs Alexander Long and Jessica Upthegrove received care from Jupiter before the Data Breach.

5.     In a letter dated January 14, 2026, Jupiter notified Plaintiffs that "Jupiter Medical Center recently learned that an unauthorized third party gained access to and obtained data that was maintained by an electronic medical record (EHR) vendor, Cerner. The vendor has determined through an investigation that at least **as early as January 22, 2025**, an unauthorized third party gained access to personal health information on legacy Cerner systems." (emphasis added). However, the letter stated, "The vendor later informed us that law enforcement investigators directed a delay in notifying patients, as well as additional hospital customers, about this incident

---

[2] Tyler Smith, *Who are the largest EHR vendors?*, Oct. 31, 2025, https://www.ehrinpractice.com/largest-ehr-vendors.html#:~:text=Hospital%20EHRs&text=Based%20on%20data%20from%20the,Meditech:%2013.2%25.

[3] Seema Verma, Oracle Acquires Cerner to Form Oracle Health: The Future of Healthcare, Oracle, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Jan. 28, 2026).

because it could have impeded their investigation."[4]

6.     According to the same letter, on "On or about November 30, 2025, [Jupiter] concluded that the personal information involved in this incident may have included your name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment information."

7.     Defendants store a litany of highly sensitive personally identifiable information ("PII") and protected health information ("PHI")—together "Private Information"—about their current and former patients. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in the Data Breach.

8.     The types of information exposed in the Data Breach include such Private information.

9.     It is unknown for precisely how long the cybercriminals had access to Defendants' network and information stored before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to current and former patients' Private Information.

10.     On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendants' failures placed the Class's Private Information in a vulnerable position—rendering

---

[4]*See also* Notices of Jupiter Medical Center, Data Breach Notice Letter to Current and Former Patients (Jan. 14, 2026), attached as **Exhibit A**.; *See also* Notice of Cerner Corporation Data Security Incident, Jan. 15, 2026, https://www.jupitermed.com/news/2026/january/notice-of-cerner-corporation-data-security-incid/.

them easy targets for cybercriminals.

11.     Plaintiffs are victims of Data Breach. They bring this class action on behalf of themselves, and all others harmed by Defendants' misconduct.

12.     The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Defendants' current and former patients' Private Information was exactly that—private. Now their Private Information is forever exposed and unsecured.

## PARTIES

13.     Plaintiff Alexander Long is a natural person and a citizen of Jupiter, Florida. He is domiciled in Florida.

14.     Plaintiff Jessica Upthegrove is a natural person and a citizen of Jupiter, Florida. She is domiciled in Florida.

15.     Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.[5]

16.     Defendant Jupiter is a Florida non-profit corporation with its principal place of business in Jupiter, Florida at 1210 S. Old Dixie Highway, Jupiter, FL 33458.[6]

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the proposed Class are citizens of a state different from at least one Defendant, the proposed Class consists of more than 100 members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

---

[5] *Oracle Acquires Cerner to Form Oracle Health; The Future of Healthcare*, ORACLE, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Nov. 6, 2025).

[6] Jupiter Medical Center, *Contact Us,* https://www.jupitermed.com/contact/ (last visited Feb. 2, 2026).

18. This Court has personal jurisdiction over Defendant Oracle Health because its principal place of business is in this District.

19. The Court also has personal jurisdiction over Jupiter because Jupiter contracted with Defendant Oracle Health—a known Kansas City, MO entity—to manage its patients' electronic health records ("EHR"). Moreover, Jurisdiction is proper under Missouri's long-arm statute. *See* Mo. Rev. Stat. § 506.500.1(1).

20. Jupiter knowingly and continually sent its patients' Private Information to Oracle Health as its EHR vendor.

21. Jupiter knew or should have known that Oracle Health stored patients' Private Information in Kansas City, Missouri.[7]

22. Jupiter failed to monitor or oversee the maintenance and security of its patients' Private Information which Jupiter sent to Oracle Health to be stored in Kansas City, MO.

23. Due to Jupiter's actions, patients' Private Information was compromised and/or exfiltrated from Oracle Health's systems.[8]

24. Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action, Plaintiffs' Private Information, is situated in this District. *See* 28 USC § 1391(b)(2).

## BACKGROUND

### *Defendants Collected and Stored the personal information of Plaintiffs and the Class*

25. Jupiter is a healthcare system based in Florida.

---

[7] Elana Gordon, Cerner Fights For Share In Electronic Medical Records Boom, NPR, KCUR, AND KAISER HEALTH NEWS, July 16, 2013, https://www.npr.org/sections/health-shots/2013/07/16/202419168/cerner-fights-for-share-in-electronic-medical-records-boom.

[8] *See* Exhibit A.

26. Jupiter uses Oracle Health (previously Cerner Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

27. As part of their business, Defendants receive and maintain the Private Information of thousands of their current and former patients.

28. In collecting and maintaining Private Information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law.

29. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' Private Information and to notify them about breaches.

*Defendants' Data Breach*

30. According to the letter notifying Plaintiffs of the Data Breach, Oracle Health informed Jupiter that it experienced a cybersecurity event involving unauthorized access to Jupiter's patient information contained on Oracle Health's systems.

31. On November 30, 2025, Jupiter concluded that Plaintiffs' Private Information may have been compromised after Oracle Health informed Jupiter of the Data Breach.

32. The types of Private Information exposed "may have included your name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment information."[9]

33. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes Jupiter's current and former patients.

34. And yet, Defendants waited until January 14, 2026, before they began notifying the

---

[9] *See* Exhibit A.

class—more than 350 days after the Data Breach—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

35.     When Defendants did notify Plaintiffs and the Class of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, providing Plaintiffs with additional information about how to protect themselves.

36.     Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing Private Information. And thus, Defendants caused widespread injury and monetary damages.

37.     Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiffs and Class members for the injuries that Defendants inflicted upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

38.     Because of Defendants' Data Breach, the sensitive Private Information of Plaintiffs and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class members.

39.     Plaintiffs Alexander Long and Jessica Upthegrove were patients of Jupiter. As a result, Defendants obtained and maintained Plaintiffs' Private Information.

40.     As a result, Plaintiffs were injured by Defendants' Data Breach.

***Plaintiff Alexander Long, on behalf of the Nationwide Class, the Jupiter Nationwide Subclass, and the Jupiter Florida Subclasses***

41.     Plaintiff Alexander Long received care from Jupiter, one of Oracle's healthcare provider clients, and received treatment prior to the Data Breach. As a condition of receiving

medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, Social Security number and medical information, in connection with Oracle's services contracted by his healthcare provider.

42. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and he chooses unique usernames for his passwords and online accounts.

43. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

44. Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

45. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

46. Plaintiff received a Data Breach Notice on or around January 14, 2026, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

47. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages,

including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been and will likely imminently be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

48. Plaintiff has been and will be forced to expend considerable time and effort including monitoring his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach. Plaintiff has already spent approximately 18 hours in total responding to the breach, and will continue spending more time as he monitors accounts and news updates regarding the Data Breach.

49. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the fact that he became a victim of identity theft in March of 2025, when someone in Arizona was found falsely working under his name, old address, and Social Security number. Plaintiff spent 10 hours organizing and attending a meeting with Social Security and obtaining an IRS security pin number in efforts to rectify the identity theft.

50. Plaintiff was also recently locked out of banking accounts due to fraudulent activity flagged by his bank. Moreover, Plaintiff has experienced a significant increase in spam texts and phone calls using his Private Information that he has received since the Data Breach. He receives 20-25 spam calls a day, filling his voicemail box every 24 hours. This is approximately ten times the rate of spam calls he received before the Data Breach.

51. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

52. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff uses the word "enormous" to convey the level of stress the Data Breach has caused. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. He set up internet alerts for new Oracle and Jupiter data breach news as a means of staying informed to reduce this anxiety, but the stress is nonetheless heavily affecting his quality of life. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

53. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

54. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

*Plaintiff Jessica Upthegrove, on behalf of the Nationwide Class, the Jupiter Nationwide Subclass, and the Jupiter Florida Subclasses*

55. Plaintiff Jessica Upthegrove was both a patient and employee of Jupiter, one of Oracle's healthcare provider clients, from 2013 to 2021. As a condition of receiving medical services and employment, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number and medical information, in connection with Oracle's services contracted by her healthcare provider.

56. Plaintiff typically takes measures to protect her Private Information and is very

careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and she chooses unique usernames for her passwords and online accounts.

57. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

58. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

59. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

60. Plaintiff received a Data Breach Notice on or around January 14, 2026, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

61. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been and will likely imminently be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

62. Plaintiff has been and will be forced to expend considerable time and effort

including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach. She has already spent considerable time researching the data breach, risks associated with her information being exposed, and signing up for credit monitoring.

63. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

64. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

65. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach, especially her privacy rights and medical information, and is experiencing emotional distress over the unauthorized disclosure of her Private Information. The stress and fear of her information being exposed and credit score being affected even make it difficult for her to sleep, thus harming her health. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

66. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed. She is also worried about the impact on her family's ability to manage her finances in

the case that she becomes unable to.

67. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

### *Consumers Prioritize Data Security*

68. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[10] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[11]

b. 89% of consumers stated that "I care about data privacy."[12]

c. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[13]

d. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[14]

e. 75% of consumers stated that "I will not purchase from organizations I don't trust

---

[10] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited Jan. 28, 2026).

[11] *Id.* at 3.

[12] *Id.* at 9.

[13] *Id.*

[14] *Id.*

with my data."[15]

### *Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft*

69.     Because of Defendants' failure to prevent the Data Breach, Plaintiffs and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.     loss of loss of the opportunity to control how their Private Information is used;

b.     diminution in value of their Private Information;

c.     compromise and continuing publication of their Private Information;

d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.     lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.     delay in receipt of tax refund monies;

g.     unauthorized use of their stolen Private Information; and

h.     continued risk to their Private Information—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fails to take appropriate measures to protect the Private Information.

70.     Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private

---

[15] *Id.* at 11.

Information can be worth up thousands depending on the type of information obtained.[16]

71.     The value of Plaintiffs and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

72.     It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

73.     One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

74.     The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

75.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and class members, and it is reasonable for any trier of fact, including this

---

[16] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, EXPERIAN, June 30, 2025, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/#:~:text=Quick%20Answer,Price%20Index%20by%20Privacy%20Affairs.

Court or a jury, to find that Plaintiffs' and other class members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

76.     Defendants disclosed the Private Information of Plaintiffs and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Private Information of Plaintiffs and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

77.     Defendants' failure to promptly and properly notify Plaintiffs and Class members of the Data Breach exacerbated Plaintiffs' and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

78.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

79.     In 2024, a record 3,158 data breaches occurred—resulting in 1,350,835,988 victim notices (i.e., 211% increase year-over-year).[17]

80.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have

---

[17] *2024 data breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited Jan. 29, 2026)

lesser IT defenses and a high incentive to regain access to their data quickly."[18]

81.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[19]

82.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

83.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

84.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[20] The FTC declared that, *inter alia*, businesses must:

a.      protect the personal customer information that they keep;

b.      properly dispose of Private Information that is no longer needed;

c.      encrypt information stored on computer networks;

d.      understand their network's vulnerabilities; and

e.      implement policies to correct security problems.

---

[18] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[19] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

[20] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

85. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

86. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

87. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

88. In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### Defendants Failed to Follow Industry Standards

89. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

90. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

91. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

92. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

### *Defendants Violated HIPAA*

93. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly transactions and code sets to maintain the privacy and security of protected health information.[21]

94. HIPAA provides specific privacy rules that require comprehensive administrative,

---

[21] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information and PHI is properly maintained.[22]

95.     The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a.      failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.      failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.      failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.      failing to identify and respond to suspected or known security incidents and failing

---

[22] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

96.  Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrates Defendants failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

97.  Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

98.  The classes that Plaintiffs seek to represent are defined as follows:

**Oracle Health Nationwide Class:**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**Oracle Health Florida Subclass:**
All individuals residing in Florida whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**Jupiter Nationwide Subclass:**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information

was provided to Oracle Health by Jupiter, including all those individuals who receive notice of the Data Breach.

**Jupiter Florida Subclass:**
All individuals residing in Florida whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Jupiter, including all those individuals who receive notice of the Data Breach.

99. Collectively, the Class and Subclasses are referred to as the "Classes" or "Class members."

100. Excluded from the Classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

101. Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

102. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

103. Numerosity. The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through Oracle Health's and its customers' records, including but not limited to, the files implicated in the Data Breach.

104. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendants engaged in the conduct alleged herein;

b. When Defendants learned of the Data Breach;

c. Whether Defendants' response to the Data Breach was adequate;

d. Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class members' Private Information;

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendants owed a duty to Plaintiffs and Class members to safeguard their Private Information;

i. Whether Defendants breached their duty to Plaintiffs and Class members to safeguard their Private Information;

j. Whether criminals obtained Plaintiffs' and Class members' Private Information via the Data Breach;

k. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class members;

l. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

m. Whether Defendants knew or should have known that their data security systems

and monitoring processes were deficient;

n. What damages Plaintiffs and Class members suffered as a result of Defendants' misconduct;

o. Whether Defendants' conduct was negligent;

p. Whether Defendants' conduct was per se negligent;

q. Whether either Defendant was unjustly enriched;

r. Whether Plaintiffs and Class members are entitled to actual and/or statutory damages;

s. Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

105. <u>Typicality.</u> Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

106. <u>Adequacy of Representation.</u> Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

107. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiffs and Class members, in that Plaintiffs' and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

108. <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

109. <u>Ascertainability</u>. Finally, all members of the proposed Class are readily ascertainable from information in Defendants' custody and control. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach.

**<u>CLAIMS FOR RELIEF</u>**

**<u>Count I – Negligence</u>**

110. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs

against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

111. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

112. Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

113. Defendants knew or should have known of the risks inherent in collecting Plaintiffs' and Class members' Private Information and the importance of adequate security. Defendants were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking healthcare-related data and other Private Information.

114. Defendants owed a non-delegable duty of care to Plaintiffs and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

   a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

   b. To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

   d. To employ reasonable security measures and to otherwise protect the Private Information of Plaintiffs and Class members pursuant to federal and state

regulations including but not limited to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

115. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

116. Defendants' duty also arose because, as health service providers, Defendants were bound by industry standards to protect their patients' confidential Private Information.

117. Defendants hold themselves out as trusted data collectors, and thereby assume a duty to reasonably protect patients' information. Indeed, Defendants, as data collectors, were in a unique and superior position to protect against the harm suffered by Plaintiffs and Class members as a result of the Data Breach.

118. Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

119. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Private Information within Defendants' possession.

120. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems

and data security practices to safeguard the Plaintiffs' and Class members' Private Information.

121. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

122. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

    b.    Failing to adequately monitor the security of their networks and systems;

    c.    Failing to periodically ensure that its email system maintained reasonable data security safeguards;

    d.    Allowing unauthorized access to Class members' Private Information;

    e.    Failing to comply with the FTCA; and

    f.    Failing to detect in a timely manner that Class members' Private Information had been compromised.

123. Defendants had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions.

124. Defendants' breach of duties owed to Plaintiffs and Class members caused Plaintiffs' and Class members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

125. As a result of Defendants' ongoing failure to notify Plaintiffs and Class members

regarding exactly what Private Information has been compromised, Plaintiffs and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

126. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

127. As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

128. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered damages as alleged herein and are at imminent risk of further harm.

129. The injury and harm that Plaintiffs and Class members suffered was reasonably foreseeable.

130. Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

131. In addition to monetary relief, Plaintiffs and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

### Count II
### Negligence *per se*

132. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on

behalf of the Jupiter Florida Subclass.

133. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

134. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

135. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs' and the Class members' sensitive Private Information.

136. Defendants breached their respective duties to Plaintiffs and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

137. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

138. The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices,

caused the same harm as that suffered by Plaintiffs and Class members.

139. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a data breach.

140. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

141. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

142. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

143. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiffs and Class

members to suffer the foreseeable harms associated with the exposure of their Private Information. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

144. As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**Count III**
**Breach of Third-Party Beneficiary Contract**

145. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

146. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

147. Upon information and belief, Oracle Health entered into valid contracts with its clients, including the Healthcare Provider Defendants, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to Oracle Health.

148. Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendants agreed to receive and protect through their services.

149. The benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and the Class members were direct and express beneficiaries of such contracts.

150. Plaintiffs and the Class are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the

circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

151. Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiffs and the Class, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

152. Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the Data Breach to occur.

153. As foreseen, Plaintiffs and the Class were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

### Count IV
### Breach of Implied Contract

154. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

155. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

156. Defendants provide healthcare-related services to Plaintiffs and Class members. Plaintiffs and Class members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiffs and Class members

paying for services from Defendants (or having their insurance companies pay Defendants on their behalf).

157. Through Defendants' sale of medical services, they knew or should have known that they must protect Plaintiffs' and Class members' confidential Private Information in accordance with Defendants' policies, practices, and applicable law.

158. As consideration, Plaintiffs and Class members paid money (or money was paid on their behalf) to Defendants and turned over valuable Private Information to Defendants. Accordingly, Plaintiffs and Class members bargained with Defendants to securely maintain and store their Private Information.

159. Defendants solicited, offered, and invited Plaintiffs and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to Oracle Health.

160. Defendants accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing healthcare-related services to Plaintiffs and Class members.

161. In delivering their Private Information to Defendants and paying for healthcare services, Plaintiffs and Class members intended and understood that Defendants would adequately safeguard Private Information as part of that service.

162. Defendants' implied promises to Plaintiffs and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized

business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

163. Plaintiffs and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

164. Had Defendants disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the Class members would not have provided their Private Information to Defendants.

165. As providers of healthcare-related services, Defendants recognized (or should have recognized) that Plaintiffs' and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class members.

166. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information. Defendants further breached these implied contracts by failing to comply with their promise to abide by HIPAA.

167. Additionally, Defendants breached the implied contracts with Plaintiffs and Class members by failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and transmitted, in violation of 45 CFR § 164.306(a)(1).

168. Defendants also breached the implied contracts with Plaintiffs and Class members

by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR § 164.312(a)(1).

169. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

170. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

171. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR § 164.306(a)(2).

172. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding PII, in violation of 45 CFR § 164.306(a)(3).

173. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to ensure compliance with the HIPAA security standard rules by their workforce, in violation of 45 CFR § 164.306(a)(4).

174. Defendants further breached the implied contracts with Plaintiffs and the Class members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

175. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard PHI, in violation of 45 CFR § 164.530(c).

176. Defendants further breached the implied contracts with Plaintiffs and the Class members by otherwise failing to safeguard Plaintiffs' and Class members' Private Information.

177. A meeting of the minds occurred, as Plaintiffs and the Class members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendants in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

178. Plaintiffs and the Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## Count V
## Unjust Enrichment

179. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

180. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

181. Plaintiffs and the Class members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services (or having their insurance companies pay for medical services) that should have included cybersecurity protection to protect their Private Information. Plaintiffs and the Class members did not receive such

protection.

182. Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including from payments made to it by Plaintiffs and the Class members (or on their behalf).

183. As such, a portion of the payments made by Plaintiffs and the Class members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

184. Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiffs and the Class members that should have been used for adequate cybersecurity practices that they failed to provide.

185. Defendants knew that Plaintiffs and the Class members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and the Class members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and the Class members' Private Information and prevented the Data Breach.

186. If Plaintiffs and the Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

187. Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

188. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered and are at a continual, substantial, imminent risk of injury, as alleged

herein.

189.    Plaintiffs and the Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation.

190.    Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### Count VI
### Breach of Fiduciary Duty

191.    This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiff against Jupiter, on behalf of the Jupiter Florida Subclass.

192.    Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

193.    In providing their Private Information to Defendants, Plaintiffs and the Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard for the interests of Plaintiffs and the Class members to safeguard and keep confidential that Private Information.

194.    As healthcare service providers, Defendants have a fiduciary relationship to their clients, like Plaintiffs and Class members.

195.    Because of that fiduciary relationship, Defendants were provided with and stored

valuable and sensitive Private Information belonging to Plaintiffs and Class members, which they were required to maintain in confidence.

196. Defendants accepted the special confidence that Plaintiffs and Class members placed in it.

197. In light of the special relationship between Defendants, and Plaintiffs and Class members, whereby Defendants became guardians of Plaintiffs and Class members' Private Information, Defendants became fiduciaries by their undertaking and guardianship of the Private Information, to act primarily for the benefit of their customers, including Plaintiffs and Class members for the safeguarding of Plaintiffs' and Class members' Private Information.

198. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and the Class members upon matters within the scope of their customer relationships, in particular, to keep secure the Private Information of their customers, exercise utmost care in protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiff and the Class members of a data breach and disclosure.

199. Plaintiffs and Class members have a privacy interest in their Private Information.

200. Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to protect the integrity of the systems containing Plaintiffs' and Class members' Private Information.

201. Defendants breached their fiduciary duties to Plaintiffs and Class members by otherwise failing to safeguard Plaintiffs and Class members' Private Information and by failing to timely notify and/or warn Plaintiffs and Class members of the Data Breach.

202. As a direct and proximate result of Defendants' breaches of their fiduciary duties,

Plaintiffs and the Class members have suffered and will suffer injuries and damages as alleged herein.

203. As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiffs and the Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

## Count VII
## Invasion of Privacy

204. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

205. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

206. Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

207. As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life.

208. A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

209. Plaintiffs' and the Class members' Private Information is not of legitimate public concern and should remain private.

210. As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

211. Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

212. Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class members.

### Count VIII
### Declaratory Judgment

213. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; or 4) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

214. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

215. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

216. In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

217. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

d. Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

218. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

219. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

220. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class members' injuries.

221. If an injunction is not issued, the resulting hardship to Plaintiffs and the Class members far exceeds the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

## Count IX
### Violation of Florida Deceptive and Unfair Trade Practices Act
### F.S.A. § 501.201, et. seq.

222. This claim is brought: 1) by Plaintiffs against Oracle Health, on behalf of the Nationwide Class, or alternatively, (2) by Plaintiffs against Oracle Health, on behalf of the Florida Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Nationwide Subclass; 3) by Plaintiffs against Jupiter, on behalf of the Jupiter Florida Subclass.

223. Plaintiffs restate the allegations in Paragraphs 1 through 109 above, as if fully set forth herein.

224. Defendants offered or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

225. Plaintiffs and members of the Jupiter Nationwide Subclass are "consumers" as defined by F.S.A. 501.203(7), and thus intended for protection under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

226. FDUTPA makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."[23] Unfair acts or practices that violate the FTC Act also violate FDUTPA.

227. Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of trade or commerce in violation of F.S.A. § 501.204(1), including:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Jupiter Nationwide Subclass's PII and PHI, which was a direct and proximate cause of the Data Breach;

---

[23] Fla. Stat. § 504.204(1).

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Jupiter Nationwide Subclass's PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Failing to comply with Florida's Information Protection Act ("FIPA"), F.S.A. § 501.171, *et. seq.*, which requires entities to "take reasonable measures to protect and secure data in electronic form containing personal information.";

e. Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and the Jupiter Nationwide Subclass's PII, including by implementing and maintaining reasonable security measures;

f. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Jupiter Nationwide Subclass's PII and PHI, including duties imposed by FIPA and the FTC Act, 15 U.S.C. § 45;

g. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Jupiter Nationwide Subclass's PII; and;

h. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Jupiter Nationwide Subclass's PII, including duties imposed by FIPA and the FTC Act, 15 U.S.C. § 45.

228. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII.

229. Defendants' representations and omissions emanated from Jupiter's headquarters in Florida.

230. Defendants' collection and maintenance of Plaintiffs' and Class Members' PII were actions central to its business and affected commerce and occurred within Florida.

231. Defendants violated FDUTPA because it violated the FTC Act, as alleged above Class Members would never have allowed Defendants to access, collect, or maintain their PII had they known that Defendants' representations regarding the safety and security of its products and services were false.

232. Had Defendants disclosed to Plaintiffs sand the Jupiter Nationwide Subclass that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business, and they would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiffs and the Jupiter Nationwide Subclass. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiffs and the Jupiter Nationwide Subclass acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

233. As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiffs and Class Members suffered actual damages. Plaintiffs and Jupiter Nationwide Subclass members received services that were less valuable than what Defendants were obligated to provide and for

which Defendants were paid, either directly or indirectly, by Plaintiffs and Class Members. The services and business offerings that Defendants ultimately provided were less valuable than what should have been delivered and what Defendants promised to deliver given Defendants' failure to fulfill the data security and privacy promises that were central to its service offerings. Moreover, Plaintiffs and the Jupiter Nationwide Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for Defendants' services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

234. Plaintiffs and the Jupiter Nationwide Subclass seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper, and are accordingly entitled to damages in amounts to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class members request judgment against Defendants and that the Court enter an order:

a. Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b. Awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution,

disgorgement, and statutory costs;

c.        Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.        Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members;

e.        Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f.        Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g.        Awarding Plaintiffs and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h.        Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class members demand a trial by jury on all triable issues.

Dated:  March 12, 2026               Respectfully submitted,

*/s/ Barrett J. Vahle*
Norman E. Siegel
Barrett J. Vahle
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
WAGSTAFF & CARTMELL, LLP
4740 Grand Ave., Suite #300
Kansas City, MO 64112
(816) 701-1100

(816) 531-2372 (facsimile)
thudson@wcllp.com

Lynn A. Toops
Amina A. Thomas
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 (facsimile)
ltoops@cohenmalad.com
athomas@cohenmalad.com

Thomas E. Loeser
COTCHETT, PITRE & McCARTHY LLP
1809 7th Ave., Ste. 1610
Seattle, WA 98101
(206) 802-1272
tloeser@cpmlegal.com

*Attorneys for Plaintiffs and Proposed Classes*